IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: PRESSURE SENSITIVE LABELSTOCK  :
ANTITRUST LITIGATION                  :      MDL Docket No. 1556
                                      :      (No. 3:03-MDL-1556)
(All Cases)                           :
                                      :      CHIEF JUDGE VANASKIE
                                      :

MEMORANDUM AND ORDER

Plaintiffs have moved for leave to file a second amended complaint.  (Dkt. Entry 149.)

The proposed pleading seeks to effect two significant changes to the scope of this putative

class action antitrust litigation.  First, the period of the alleged conspiracy in restraint of trade is

changed from "as early as January 1, 1999," to "at least as early as January 1, 1996."  And

second, the actionable conduct is alleged to be not only a price-fixing conspiracy, but also a

conspiracy "to allocate and restrict output in the market for self-adhesive labelstock."[1]

Rule 15(a) of the Federal Rules of Civil Procedure commands that leave to amend "shall

be freely given when justice so requires."  Explicating this directive, our Court of Appeals has

---

[1] Plaintiffs attempt to minimize the import of the proposed amended complaint by asserting that a market allocation conspiracy is but one means of fixing prices.  While it may be that the ultimate result of a market output conspiracy is to maintain prices above a level set by free market forces, the proposed pleading alleges a type of actionable antitrust claim that is not encompassed within the original and first amended complaints filed in this matter.  Moreover, the proposed pleading effectively doubles the period of the alleged antitrust conspiracy.  I thus concur with Defendants' assertion that the proposed pleading seeks to add a "new claim and new alleged facts [that] differ profoundly from the claim of price fixing and alleged facts contained in the First Amended Complaint."  (Brief in Opp. to Mot. to File Second Amended Complaint (Dkt. Entry 162) at 5.)

stated:

> In the absence of any apparent or declared reason – such as
> undue delay or dilatory motive on the part of the movant, repeated
> failure to cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc. – the leave sought should,
> as the rules require, be 'freely given.'

Lorenz v. USX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993) (quoting FED. R. CIV. P. 15(a)).

Defendants urge that leave to file the second amended complaint be denied, arguing

that (a) there was undue delay in presenting the motion; (b) Defendants would incur a

substantial burden in responding to discovery requests concerning matters that occurred ten

years ago; and (c) extension of the conspiratorial period to more than four years before the

inception of this action in 2003 must fail because Plaintiffs have not alleged with requisite

particularity fraudulent concealment of the cause of action sufficient to toll the running of the

four-year limitations period.  Each of these contentions will be addressed separately.

As to the issue of undue delay, Defendants argue that documents on which Plaintiffs rely

to premise the output restriction claim were produced months before Plaintiffs signaled their

intention to submit a second amended complaint.  Defendants further observe that Plaintiffs

were in possession of information purporting to support this new claim at the time that this Court

conducted a scheduling conference and Plaintiffs failed to inform the Court of the likelihood of

their seeking leave to amend.  Plaintiffs counter by stating that substantial time was required to

review the several million pages of documents produced in this matter; that document

production occurred over an extended period of time; and that document production was not completed until approximately one month before the motion to amend was presented to this Court.  Plaintiffs further point out that leave to amend was sought prior to the close of the class discovery period, and before discovery on the substance of their claims has been allowed.

Implicit in the concept of "undue delay" is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier.  Only if there is indeed "delay" does the question of whether the delay was "undue" become pertinent.  Delay becomes "undue" when it imposes an unwarranted burden on the litigation process.  See McCarthy v. Komori America Corp., 200 F.R.D. 507, 508 (E.D. Pa. 2001).

In this case, Plaintiffs moved for leave to amend the pleadings within one month of substantial completion of massive document production.  While it may be true that the documents suggesting a market allocation conspiracy were produced by one of the Defendants months before the close of document discovery, it is equally true that document discovery was not substantially completed until shortly before leave to amend the pleadings was sought.  As Plaintiffs argue, "it would not have made any sense for Class Plaintiffs to amend the complaint before all Defendants substantially completed their document production."  (Reply Brief in Support of Motion for Leave (Dkt. Entry 170) at 3.)  Accordingly, it cannot be said that the

motion for leave to amend was the product of any delay, let alone undue delay.[2]

Even in the absence of delay, leave to amend may be denied where Defendants would be unduly prejudiced by allowing the amendment.  Indeed, "prejudice to the non-moving party is the touchstone for the denial of a request for leave to amend."  Tarkett, Inc. v. Congolium Corp., 144 F.R.D. 289, 290 (E.D. Pa. 1992).

The issue of undue prejudice to Defendants presents a much closer call than the question of undue delay.  Defendants persuasively argue that expansion of the class period to at least as early as January 1, 1996 will necessitate the re-examination of records previously determined to be outside the scope of this litigation and re-interviewing witnesses to ascertain their knowledge with respect to matters occurring prior to January 1, 1999.  The time and expense involved in that endeavor are likely to be substantial.  I am not unsympathetic to the potentially enormous burdens imposed by the significant expansion of Plaintiffs' claims wrought by the proposed amended pleading.

On the other hand, Plaintiffs have averred that they learned of facts suggesting a market allocation conspiracy only after commencement of this litigation.  Moreover, they have asserted fraudulent concealment of this particular claim.  To disallow the amended pleading on the

---

[2]This matter is plainly distinguishable from cases cited by Defendants, such as Berger v. Edgewater Steel Co., 911 F.2d 911, 923-24 (3d Cir. 1990), where leave to amend was sought only after the close of merits discovery and where there was ample evidence that the plaintiffs were in possession of the facts requisite to the newly-asserted claims well before the expiration of the discovery period.

grounds that Defendants will incur substantial expenditures of time and money to gather the

requisite information serves to penalize Plaintiffs for not knowing sooner the facts Plaintiffs

claim Defendants concealed.  Viewed in this light, the command that leave to amend be "freely

given when justice so requires," FED. R. CIV. P. 15(a), compels allowance of the amended

pleading.[3]

The final objection to the motion is that recovery for matters occurring more than four

years before the inception of this litigation is barred by Plaintiffs' failure to allege with

particularity fraudulent concealment of the purported causes of action.  Stated otherwise,

Defendants assert that the proposed amended pleading fails to state a viable claim for relief for

matters occurring more than four years before the commencement of this litigation.  Of course,

leave to amend may be denied where "the complaint, as amended, would fail to state a claim

upon which relief could be granted."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410,

1434 (3d Cir. 1997).

To be sure, Plaintiffs in both the First Amended Complaint and the proposed amended

pleading have asserted fraudulent concealment as a basis for tolling the running of the

limitations period.  Defendants, observing that fraudulent concealment must be averred with

---

[3]The burden imposed on Defendants during the class discovery period will be assessed carefully in resolving disputes that may arise with respect to additional discovery that Plaintiffs seek to pursue.  In this regard, it may be appropriate to limit pre-1999 discovery to the market allocation conspiracy that apparently forms the premise for extending the period of actionable conduct from January 1, 1999 to January 1, 1996.

particularity, see Davis v. Grusemeyer, 996 F.2d 617, 624 (3d Cir. 1993) abrogated on other

grounds by Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644 (3d Cir.1998), argue that

Plaintiffs have not met the requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

This issue also presents a close call.

     To present a viable claim of fraudulent concealment a plaintiff must allege facts

suggesting that "defendants engaged in affirmative acts of concealment designed to mislead

the plaintiffs regarding facts supporting their [antitrust] claim." Forbes v. Eagleson, 228 F.3d

471, 487 (3d Cir. 2000).  All that Plaintiffs have alleged is that (a) Defendants' agreements

"were struck in private;" (b) some defendants expressed a willingness to sign a non-disclosure

agreement; (c) discussions of labelstock prices were conducted covertly; (d) an employee was

instructed to delete a name and fax number from a price list in December of 2000; and (e)

"Defendants used different product codes or designations for the same or similar construction in

order to prevent customers from comparing prices, a practice that Raflatac acknowledged was

aimed at deceiving its customers."  (Proposed Second Amended Complaint at ¶ 72.)  With the

exception of the instruction to remove a name and fax number from a price list, the purported

examples of "affirmative fraudulent concealment" alleged in ¶ 72 of the proposed amended

pleading are either entirely conclusory ("defendants held covert discussions of labelstock prices

to avoid detection of their conduct"); lack the specificity required by Rule 9(b) ("defendants used

different product codes or designations for the same or similar construction in order to prevent

customers from comparing prices"); or described conduct that could not support an inference of active concealment ("Avery noted UPM-Kymmene's willingness to sign a non-disclosure agreement that would foster a 'global partnership' between Avery and UPM-Kymmene").

Although the sufficiency of these allegations is doubtful, the issue need not be resolved because Plaintiffs also rely on the concept of a "self-concealing conspiracy."  As explained by Judge Huyett in <u>Bethlehem Steel Corp. v. Fischbach & Moore, Inc.</u>, 641 F. Supp. 271, 274 (E.D. Pa. 1986):

> [A] self-concealing conspiracy will suffice to meet the requirement of wrongful concealment. [A] self-concealing conspiracy is the logical equivalent of affirmative acts which conceal a plaintiff's claim; in both instances, the plaintiff lacks the opportunity to bring the claim because of its inability to discover it . . . [There is] no reason to distinguish between situations where a conspiracy is self-concealing and where plaintiff alleges affirmative conduct by the defendant to conceal wrongdoing.
>
> *          *          *
>
> [A] self-concealing conspiracy tolls the statute of limitations until such time as the plaintiff, through the exercise of diligence, becomes aware of the conspiracy.  If the conspiracy conceals itself, it would be anomalous to require plaintiff to allege affirmative acts by defendants to conceal the conspiracy because such acts would be unnecessary and therefore never performed . . . . [D]efendants would be rewarded for engaging in a successful conspiracy; because no affirmative acts independent of the conspiracy would be necessary to maintain concealment, plaintiff would never be able to pursue an action for the conspiratorial conduct.

Finding that the plaintiff had adequately alleged the existence of a conspiracy, "which if established would be a type likely to be self-concealing," Judge Huyett denied a motion to

dismiss that attacked the adequacy of a fraudulent concealment claim.  Id. at 275.  Other courts

have similarly concluded that a claim of fraudulent concealment in the context of an antitrust

action may be premised upon a self-concealing conspiracy without additional averments of

active concealment.  See, e.g., In re Mercedes-Benz Antitrust Litigation, 157 F. Supp. 2d 355,

371-73 (D.N.J. 2001); In re Sumitomo Copper Litig., 120 F. Supp. 2d 328, 346 (S.D.N.Y. 2000)

("Plaintiffs have established the first element by alleging that the conspiracy was self-concealing

in nature. . . .   Thus, Plaintiffs do not need to demonstrate that any of the Defendants took

affirmative acts of concealment to establish the first prong of fraudulent concealment.").

Plaintiffs have adequately alleged the existence of an antitrust price-fixing conspiracy in

this matter.  They have also adequately alleged a self-concealing conspiracy.  As Judge Wolin

has observed, "[r]egardless of whether concealment is an essential element of price-fixing,

secrecy is its natural lair."  In re Mercedes-Benz, 157 F. Supp. at 372.  Thus, the proposed

amended pleading satisfies the requirement of alleging with particularity Defendants'

concealment of the cause of action.

Defendants nonetheless argue that Plaintiffs may not rely on the fraudulent concealment

doctrine because they have failed to allege with requisite particularity due diligence on their

part.  In this regard, Defendants assert that the averments of the proposed pleading suggest

that Plaintiffs should have been aware of facts sufficient to warrant an investigation on their part

earlier than 1999, and Plaintiffs do not allege that they undertook any investigation before this

litigation was commenced.

Dismissal for lack of due diligence, however, is appropriate only "when the facts from which knowledge may be imputed are clear from the pleadings and the public disclosures themselves." In re Sumitomo, 120 F. Supp. 2d at 346.  As a general rule, rejection of a fraudulent concealment claim on the pleadings for failure to allege due diligence is not appropriate.  See In re Mercedes-Benz, 157 F. Supp. 2d at 373-74; Bethlehem Steel, 641 F. Supp. at 275.  ("Whether a party has exercised due diligence is a factual issue which cannot be decided on a motion to dismiss unless it appears beyond doubt that plaintiff can prove no facts to support the claim.")  Furthermore, "notice in the context of fraudulent concealment is close to actual notice, not the kind of notice – based on hints, suspicions, hunches or rumors – that requires a plaintiff to make such inquiries in the exercise of due diligence, but not to file suit.'" In re Vitamins Antitrust Litigation, No. Misc. 99-197, 2000 WL 1475705, at *5 (D.D.C. May 9, 2005). Thus, our Court of Appeals affirmed the dismissal of a fraudulent concealment claim where the averments of the complaint clearly demonstrated that the plaintiff had actual knowledge of the actionable conduct in question more than four years before bringing the action.  Davis, 996 F.2d at 624-25.[4]   In this case, it cannot be concluded that Plaintiffs will be

---

[4]The other Third Circuit case upon which Defendants place heavy reliance, In Re Lower Lake Erie Iron Ore Antitrust Litigation, 998 F.2d 1144, 1178 (3d Cir. 1993), was decided on a summary judgment motion and thus provides little support for dismissal of the fraudulent concealment claim on the pleadings of this case.

unable to establish due diligence as a matter of law.  Thus, it similarly cannot be said that extending the period of actionable conduct to more than four (4) years before commencing litigation would be futile.

ACCORDINGLY, **IT IS HEREBY ORDERED THAT:**

1.  Plaintiffs' Motion for Leave to File a Second Amended Complaint (Dkt. Entry 149) is **GRANTED**.

2.  The Clerk of Court shall file under seal as Plaintiffs' Second Amended Complaint the document appearing under seal now at Dkt. Entry 151.  Within **ten (10) days** from the date of this Order, the parties shall agree on a redacted version of the Second Amended Complaint, which redacted version shall be made part of the public record in this case.

3.  A telephonic status conference to discuss deadlines for completion of class discovery and to address any pending discovery disputes shall be conducted on **Thursday**, **January 19, 2006 at 9:30 a.m.**   Counsel for plaintiffs is responsible for placing the call to **570-207-5720**,

and all parties shall be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

Dated:  January 3, 2006