IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


IN RE: PRESSURE SENSITIVE LABELSTOCK  :
ANTITRUST LITIGATION                                   :          MDL Docket No.  1556
                                                                          :          (No. 3:03-MDL-1556)
                                                                          :          (All Cases)
                                                                          :
                                                                          :          JUDGE VANASKIE

MEMORANDUM

        On July 22, 2008, this Court conducted a hearing on Class Plaintiffs' Motion for Final

Approval of Settlement and for Expenses.  (Dkt. Entry 377.)  The proposed settlement between

Class Plaintiffs and two of the Defendants to this antitrust litigation – UPM-Kymmene

Corporation ("UPM") and its wholly-owned subsidiary, Raflatac, Inc. ("Raflatac") – calls for the

Settling Defendants to pay $8.25 million in cash and cooperate with Class Plaintiffs, in

exchange for which the Settling Defendants are to be discharged from further liability.  No party

objected to the proposed settlement at the hearing or prior thereto.  At the conclusion of the

hearing, the Court expressed its determination that the proposed settlement was "fair,

reasonable, and adequate," thus deserving approval.  The Court also approved the request of

Class Plaintiffs' counsel for payment of $500,000 from the settlement fund to use in paying

outstanding and future litigation costs.  This Memorandum Opinion memorializes the findings

upon which approval of the Settlement was based.  Appended to this Memorandum Opinion is

the Final Approval Order and Judgment proposed by Class Plaintiffs, which will be adopted by

this Court.

I. <u>BACKGROUND</u>

This anti-trust litigation began in April of 2003 when several purchasers of self-adhesive labelstock commenced litigation in several different United States District Courts, including the Middle District of Pennsylvania.  In November of 2003, the Judicial Panel on Multi-District Litigation issued an Order transferring all related cases to the Middle District of Pennsylvania for coordinated pre-trial proceedings.  (Dkt. Entry 1.)

On February 16, 2004, Class Plaintiffs filed an Amended and Consolidated Class Action Complaint, alleging that Defendants Avery Dennison Corporation ("Avery"), Bemis Company, Inc. ("Bemis"),[1] Morgan Adhesives Company ("MACtac") (a wholly owned subsidiary of Bemis), Raflatac, and UPM conspired to restrain competition in the United States market for pressure-sensitive labelstock by fixing, maintaining, or stabilizing prices, as well as by allocating market shares.  (Dkt. Entry 46.)  On April 15, 2004, this Court issued an Order that limited discovery to class certification-related issues, with the explicit reservation that "class-based and merits-based issues may not be mutually exclusive, and discovery on class-based issues is not precluded merely because it overlaps with merits-based issues."  (Dkt. Entry 64, at 1.)

Class certification-related discovery was extensive and protracted.  In addition, the parties presented comprehensive reports of expert witnesses that included analyses of the

---

[1]Bemis was dismissed as a party to this litigation by Memorandum and Order of this Court entered on June 24, 2008.  (Dkt. Entry 381.)

labelstock industry and pertinent transactional data.

In January of 2006, this Court granted Class Plaintiffs' motion for leave to file a second amended complaint, (Dkt. Entry 189), as a result of which the proposed Class Period was expanded.  A telephonic discovery conference was conducted on January 25, 2006, for purposes of determining the scope of additional discovery in light of the filing of the second amended complaint.

On August 14, 2006, Class Plaintiffs moved for class certification.  (Dkt. Entry 244.) Briefing on the motion was completed on February 23, 2007, and oral argument on the class certification motion was held on March 1, 2007.  By Memorandum and Order dated November 19, 2007, (Dkt. Entry 335), this Court granted Plaintiffs' motion, certifying the following class:

> All persons (excluding governmental entities, Defendants, co-conspirators, other producers of self-adhesive labelstock, and the present and former parents, predecessors, subsidiaries, and affiliates of the foregoing) who purchased paper-based self-adhesive labelstock or film-based self-adhesive labelstock in the United States directly from any of the Defendants, or any present or former parent, subsidiary, or affiliate thereof, at any time during the period from January 1, 1996, to July 25, 2003.  The terms "paper-based self-adhesive labelstock" and "film-based self-adhesive labelstock" do not include Avery's FasClear and PRIMAX film products.  Nor do those terms include foil and "piggyback" self-adhesive labelstock.

The settlement agreement between Class Plaintiffs, UPM, and Raflatac was executed in November of 2007.  As noted above, it calls for the creation of an $8.25 million cash fund, which has already been paid into escrow.  In addition, the Settling Defendants have agreed to "proffer all known facts and information potentially relevant to the Class Action, including

3

without limitation those that arguably evidence collusion or agreements between and among

producers or potential producers of Self-Adhesive Labelstock in the United States during the

Class Period." (Settlement Agreement, Dkt. Entry 338-2, ¶ 51.)  The Settling Defendants are

also to identify all current and former officers, directors, and employees that they believe may

have potentially relevant information, and to meet with counsel for Class Plaintiffs to identify

such individuals, make them available for interviews and for testimony in deposition and at trial,

and provide declarations and affidavits from such persons relating to the litigation.  (Id. ¶¶ 51-

52.)

By Order dated April 11, 2008, this Court preliminarily approved the Settlement and

authorized the dissemination of notice of the Settlement to the Plaintiff Class.  (Dkt. Entry 370.)

In addition to approving the plan of notice, this Court's Order scheduled a final approval hearing

for July 22, 2008.

On May 2, 2008, the Claims Administrator mailed the approved notice to more than

5,000 direct purchasers of self-adhesive labelstock.  In addition, the Summary Notice approved

by the Court was published in the June/July issue of *Labels and Labeling,* a periodical serving

the labelstock industry.

As noted above, no party objected to the proposed Settlement.  Moreover, only four

members of the Plaintiff Class requested to be excluded from the settlement.  The purchases of

the entities that excluded themselves from the Settlement Class represent a tiny fraction of all

purchases.

Class Plaintiffs moved for final approval of the proposed settlement on June 2, 2008.
(Dkt. Entry 377.)  A hearing was held on July 22, 2008.

II. DISCUSSION

In determining whether to approve a proposed settlement of a class action, the Court

must assure that adequate notice has been provided to the members of the class.  In addition,

the Court must find that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P.

23(e)(2).

A. Adequacy of Notice of the Proposed Settlement

As to the notice requirement, this Court previously determined that the content of the

notice was sufficient to apprise class members of the terms of the Settlement Agreement and

their rights in relation to the proposed settlement.  The method of notice, first-class mail to all

members of the class plus a summary of the notice published in a pertinent publication, was

also adequate to satisfy the requirements of both the Federal Rules of Civil Procedure and due

process.  See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90-93 (3d

Cir. 1985).

B. Fairness, Reasonableness, and Adequacy of the Proposed Settlement

Whether to approve a proposed class action settlement is committed to the trial court's

discretion.  See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).

Exercise of this discretion is guided by a number of factors, including (1) the complexity, expense, and probable duration of the litigation; (2) the reaction of the class to the proposed settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risk of establishing liability; (5) the risk of establishing damages; (6) the risk of maintaining the class action through trial; (7) the settling defendants' ability to withstand a greater judgment; (8) the range of reasonableness of the settlement amount in light of the best possible recovery; and (9) the range of reasonableness of the settlement amount to a possible recovery in light of the attendant risks of litigation.  See Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). Consideration of these factors compelled this Court to exercise its discretion in favor of approving the proposed partial settlement as fair, reasonable, and adequate.

First, this litigation has already proven to be complex, expensive, and protracted. Merits-based discovery has just begun, and is projected to extend for a considerable period of time.  There undoubtedly will be dispositive motions.  This factor certainly weighs in favor of approving the proposed settlement.  See In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 536-37 (D.N.J. 1997).

Second, the reaction of the class to the proposed settlement favors its approval.  No party has objected to the proposed settlement.  As Judge DuBois remarked in In re Linerboard Antitrust Litigation, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004), "[t]his fact strongly militates a finding that the settlement is fair and reasonable."  And as Judge Shapiro observed in Fisher

Bros. v. Phelps Dodge Industries, Inc., 604 F. Supp. 446, 451 (E.D. Pa. 1985) (quotation omitted), "unanimous approval of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement[]." Also weighing in favor of approval of the settlement is the fact that the four entities that have excluded themselves from the settlement represent a minuscule amount of total sales to the Class. Thus, the reaction of the Class to the proposed settlement strongly favors approval.

As to the stage of the proceeding and the amount of discovery completed, Class Plaintiffs represent that they have completed extensive discovery, expending in excess of $1 million in costs alone. Although merits-related discovery has just been allowed to proceed, discovery on class-related issues necessarily resulted in the disclosure of information concerning substantive issues. In addition, Class Plaintiffs have conferred with pertinent expert witnesses and have obtained comprehensive analyses of the relevant market. This Court carefully assessed the record compiled during class discovery in determining that class certification was warranted. Plainly, Class Plaintiffs have been able to uncover sufficient information to evaluate the strengths and weaknesses of the claims and defenses in this matter. Thus, this factor also weighs in favor of approving the settlement.

Risks of establishing liability and damages are substantial. Already, one Defendant has been dismissed from this action. In addition, the criminal investigation that likely instigated this antitrust litigation was concluded without the issuance of any indictments. Even if liability is

established, damages are not a certainty.  Thus, the risk of establishing liability and the risk of establishing damages support approval of the settlement.

The risk of maintaining the class through trial appears to be a neutral factor.  In re Cendant Corp. Litig, 264 F.3d 201, 239 (3d Cir. 2001).  All that can be said at this stage of the case is that there is no assurance that Plaintiffs will be able to maintain this litigation as a class action through trial.

No information has been provided as to the next factor – the ability of the Settling Defendants to withstand a greater judgment – and thus this factor either is neutral or weighs against approval of the settlement.  Id. at 241.  Nonetheless, the substantial risks associated with this complex litigation minimize the weight to be given to the ability of the Settling Defendants to pay a larger judgment.  Moreover, the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.

Finally, the cash consideration of $8.25 million places this settlement well within the range of reasonableness in light of the best possible recovery and in light of all attendant risks of litigation.  It is undisputed that the cash portion of the settlement represents approximately 35% of single damages attributable to the Settling Defendants' sales during the Class period.  It is also undisputed that the cash portion of the settlement is approximately 1.5% of Settling Defendants' sales to the Class during the Class period.  The cash consideration of the

settlement is within the range of settlements approved in other class action cases in this circuit. See e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d at 538 (settlement fund represented 33% of available damages); In re Cendant Corp. Litig, 264 F.3d at 241 (settlement represented 36-37% of damages); In re Linerboard Antitrust Litig., 321 F. Supp. 2d at 627 (settlement represented 1.62% of sales during the Class Period). Furthermore, as Class Plaintiffs observe, "the significant cash payout, coupled with Settling Defendants' extensive proffer of facts and information, represents an immediate and valuable benefit to the Class that will aid in ongoing litigation against the non-settling Defendants." (Mem. Law Supp. Class Plaintiffs' Mot. Final Approval Settlement & Expenses, Dkt. Entry 379, at 24.) Accordingly, the final Girsh factors predominate in favor of approval of the settlement.

In summary, seven of the nine Girsh factors weigh in favor of approval of the settlement. The remaining two factors – ability to maintain the proceeding as a class action through trial and the ability of the Settling Defendants to withstand a greater judgment – do not outweigh the other seven factors, especially in light of the benefit of the cooperation provision. Thus, consideration of the pertinent factors compels an exercise of discretion in favor of approval of the proposed Settlement.

C. Award of Litigation Expenses to Class Counsel

As noted above, Class Counsel also seek an Order approving payment from the settlement fund of up to $500,000 for use in paying future litigation costs, as well as paying

9

approximately $39,000 in outstanding invoices for expenses incurred to date.  The Class has received adequate notice of this request for reimbursement of expenses.  No party has objected.  Under these circumstances, approval of the request for an award of $500,000 for use in paying outstanding and future litigation costs is warranted.

III. CONCLUSION

Plaintiffs have plainly established that the proposed settlement is "fair, adequate, and reasonable."  Moreover, Class Counsel have substantiated the propriety of an award of $500,000 from the settlement fund to be used for presently unpaid and future litigation costs. Accompanying this Memorandum is the Final Approval Order and Judgment proposed by Class Counsel, which this Court finds to be appropriate.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

10

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


IN RE: PRESSURE SENSITIVE LABELSTOCK  :
ANTITRUST LITIGATION                              :           MDL Docket No.  1556
                                                              :           (No. 3:03-MDL-1556)
                                                              :           (All Cases)
                                                              :
                                                              :           CHIEF JUDGE VANASKIE

## FINAL APPROVAL ORDER AND JUDGMENT

WHEREAS, the Plaintiffs Scranton Label, Inc.; Bertek Systems, Inc.; Glenroy, Inc.;

McCarty Printing Corp.; and Pamco Tape & Label, Inc. (collectively, "Plaintiffs"), on behalf of

themselves and each Class member (as defined herein), by and through their counsel of

record, have asserted claims for damages against, inter alia, Defendants UPM-Kymmene

Corporation ("UPM") and Raflatac, Inc. ("Raflatac") (collectively, the "Settling Defendants"),

alleging violations of federal antitrust law;

WHEREAS, the Plaintiffs and Settling Defendants, desiring to resolve any and all

disputes in this action, executed a settlement agreement dated November 9, 2007 (the

"Settlement Agreement");

WHEREAS, the Settlement Agreement does not constitute, and shall not be construed

as or deemed to be evidence of, an admission of any fault, wrongdoing, or liability by the

Settling Defendants or by any other person or entity;

WHEREAS, in full and final settlement of the claims asserted against them in this action,

the Settling Defendants have agreed to provide settlement consideration consisting of eight

million, two hundred and fifty thousand dollars ($8,250,000) ("the Settlement Fund"), as well as cooperation with the Class, including the production of information relevant to Plaintiffs' claims;

WHEREAS, the Settling Defendants and the Class have agreed to entry of this Final Approval Order and Judgment (hereinafter, the "Order");

WHEREAS, on April 11, 2008, this Court granted preliminary approval to the Settlement Agreement and directed that Notice be given to the Class;

WHEREAS, pursuant to Plaintiffs' Motion to Approve Form and Method of Notice to the Class, Notice of the Settlement was given to members of the Class, in accordance with Federal Rules of Civil Procedure 23(c)(2) and 23(e) and the requirements of due process, and Class Members were afforded the opportunity to exclude themselves from the Settlement or to object or otherwise comment on the Settlement;

WHEREAS, Class Counsel have incurred in excess of $1 million in unreimbursed expenses in litigating on behalf of the Class and have applied for an award from the Settlement Fund of $500,000 for use in paying outstanding and subsequently incurred expenses in the prosecution of the litigation;

WHEREAS, an opportunity to be heard was given to all persons requesting to be heard in accordance with this Court's orders; the Court has reviewed and considered the terms of the Settlement Agreement and the submissions of the parties in support thereof; and after holding a hearing on July 22, 2008, at which all interested parties were given an opportunity to be

2

heard; and

WHEREAS, there is no just reason for delay;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

I.      JURISDICTION

1.1.  This Court has jurisdiction over the subject matter of this action and each of the

parties to the Settlement Agreement.  Plaintiffs brought this action asserting a claim under

Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and Section 1 of the Sherman

Act, 15 U.S.C. § 1.  Jurisdiction lies in this Court pursuant to 28 U.S.C. §§ 1331 and 1337.

II.     DEFINITIONS

As used in this Final Approval Order and Judgment, the following definitions shall apply:

2.1.  "UPM" or "Settling Defendants" means UPM Kymmene Corporation and Raflatac,

Inc., and their respective past and present parents, subsidiaries, affiliates, officers, directors,

employees, agents, attorneys, servants, and representatives (and the parents', subsidiaries',

and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and

representatives), and the predecessors, heirs, executors, administrators, and assigns of each

of the foregoing.

2.2.  "Self-Adhesive Labelstock" means materials used to make labels, generally

produced in large rolls of a multi-layer laminate consisting of a face material, an adhesive, a

release layer, and the base material.  "Self-Adhesive Labelstock" includes paper-based and

3

film-based self-adhesive labelstock.  The terms "paper-based self-adhesive labelstock" and "film-based self-adhesive labelstock" do not include Avery's FasClear and PRIMAX film products.  Nor do those terms include foil and "piggyback" self-adhesive labelstock.

2.3.  "Litigation" means the action pending in this Court titled <u>In re Pressure Sensitive Labelstock Antitrust Litigation</u>, MDL No. 1556.

2.4.  "Notice" means, collectively, the communications by which the Class was notified of the Court's certification of the Class and the existence and terms of the Settlement.

2.5.  "Notice Plan" means the plan approved by the Court for notifying the Class of the Settlement.

2.6.  "Plaintiffs" means Scranton Label, Inc., Bertek Systems, Inc., Glenroy, Inc., McCarty Printing Corp., and Pamco Tape & Label, Inc.

2.7.  "Plaintiffs' Counsel" or "Class Counsel" means the law firms of Trujillo Rodriguez & Richards, LLC; Lockridge Grindal Nauen P.L.L.P.; Cohen Milstein Hausfeld & Toll, P.L.L.C.; and Keating Muething & Klekamp, P.L.L.

2.8.  "Request for Exclusion" means a request to be excluded from the Class, submitted in accordance with instructions provided in the Notice.

2.9.  "Settlement" means the settlement contemplated by the terms, conditions, and provisions set forth in the Settlement Agreement.

2.10.  "Settlement Agreement" means the Settlement Agreement dated November 9,

4

2007, by and among Plaintiffs, on behalf of themselves and each Class Member, and the Settling Defendants.

2.11. "Settlement Agreement Date" means November 9, 2007, the date as of which the Settling Parties entered into the Settlement Agreement.

2.12. "Class" means all persons who purchased paper-based self-adhesive labelstock or film-based self-adhesive labelstock in the United States directly from any of the Defendants, or any present or former parent, subsidiary, or affiliate thereof, at any time during the period from January 1, 1996 to July 25, 2003. The terms "paper-based self-adhesive labelstock" and "film-based self-adhesive labelstock" do not include Avery's FasClear and PRIMAX film products. Nor do those terms include foil and "piggyback" self-adhesive labelstock. Excluded from the Class are governmental entities, Defendants, co-conspirators, other producers of Self-Adhesive Labelstock, and the present and former parents, predecessors, subsidiaries, and affiliates of the foregoing.

2.13. "Class Member" means any person or entity, including but not limited to each individual representative Plaintiff, that satisfies all of the requirements for inclusion in the Class as set forth in paragraph 2.12 herein, and that does not timely validly request exclusion therefrom.

2.14. "Settling Parties" means collectively, each of the Plaintiffs, on behalf of themselves and each Class member, and the Settling Defendants.

2.15.  "Judgment" refers to this Final Approval Order and Judgment.

2.16.  "Effective Date" shall occur upon (a) the entry by the Court of a final order approving the Settlement Agreement under Fed. R. Civ. P. 23(a) together with entry of a final judgment dismissing the Class Action and all claims therein against the Settling Defendants on the merits with prejudice as to all Class Members (the "Final Judgment"), and (b) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken.  Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

2.17.  "Releasees" shall refer jointly and severally, individually and collectively to the Settling Defendants, and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, and representatives (and the parents', subsidiaries', and affiliates' past and present officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

2.18.  "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, the Class Members, and their respective past and present parents, subsidiaries,

affiliates, officers, directors, employees, agents, attorneys, servants, and representatives (and

the parents', subsidiaries', and affiliates' past and present officers, directors, employees,

agents, attorneys, servants, and representatives), and the predecessors, successors, heirs,

executors, administrators, and assigns of each of the foregoing.

2.19.  "Released claims" means that, upon the occurrence of the Effective Date and in

consideration of payment of the Settlement Amount as specified in Paragraphs 18 and 32 of

the Settlement Agreement, the Releasees shall be completely released, acquitted, and forever

discharged from any and all claims, demands, actions, suits, and causes of action (whether

class, individual, or otherwise in nature); damages whenever incurred; and liabilities of any

nature whatsoever, including costs, expenses, penalties, and attorneys' fees, that Releasors, or

anyone of them, whether directly, representatively, derivatively, or in any other capacity, ever

had, now have, or hereafter can, shall, or may have against the Releasees, whether known or

unknown, that relate in any way to the facts, occurrences, transactions, other matters alleged in

the Litigation, or that could have been asserted in the Litigation under federal or state antitrust,

unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil

conspiracy laws.  "Released Claims" do not, however, include claims based on (a) product

defect, breach of contract, breach of warranty, or similar claim; or (b) indirect purchases of

Self-Adhesive Labelstock Products.  Such reservation of claims by the Releasors does not

constrain the Releasees from asserting any defense to those claims.  The Releasors shall not,

7

after the Effective Date of this Settlement Agreement, seek to recover against any of the

Releasees for any of the Released Claims.

III.     FINAL APPROVAL OF  SETTLEMENT

3.1  On November 19, 2007, this Court certified the Class, as defined below:

All persons (excluding governmental entities, Defendants, co-conspirators, other
producers of self-adhesive labelstock, and the present and former parents,
predecessors, subsidiaries, and affiliates of the foregoing) who purchased
paper-based self-adhesive labelstock or film-based self-adhesive labelstock in
the United States directly from any of the Defendants, or any present or former
parent, subsidiary, or affiliate thereof, at any time during the period from January
1, 1996, to July 25, 2003.  The terns "paper-based self-adhesive labelstock" and
"film-based self-adhesive labelstock" do not include Avery's FasClear and
PRIMAX film products.  Nor do those terms include foil and "piggyback"
self-adhesive labelstock.

3.2  Attached hereto as Exhibit 1 is the list of persons and entities that have timely

excluded themselves from the Class and for which this Final Approval Order and Judgment has

no force or effect.

3.3.  The terms of the Settlement Agreement are adjudged to be fair, reasonable, and

adequate, and in the best interests of Plaintiffs and the Settlement Class as a whole, and

satisfy the requirements of Federal Rules of Civil Procedure 23(a)(2) and 23(e) and due

process.

3.4.  The Court finds that the Notice and the Notice Plan constituted the best notice

practicable under the circumstances and constituted due and sufficient notice and that all Class

Members were afforded the opportunity to exclude themselves from participation in this action.

3.5.  The terms of the Settlement Agreement are hereby approved, and the Settling Parties are directed to implement the Settlement in accordance with its terms.

3.6.  No part of the settlement consideration provided by the Settling Defendants pursuant to the Settlement Agreement shall constitute, nor shall it be construed or treated as constituting, a payment in lieu of treble damages, fines, penalties, forfeitures, or punitive recoveries under any state or federal laws, rules or regulations, or any other applicable statute or provision.

IV.    DISMISSAL OF ACTION AND RELEASE OF CLAIMS

4.1.  This Litigation is dismissed with prejudice as to the Settling Defendants only, and, except as provided in paragraph 5.1 of this Order and except as pursuant to paragraph 7.2 of this Court's Order Preliminarily Approving Settlement and allowing for the withdrawal from the Settlement Fund funds for payment of notice, administration of the Settlement, without costs. The Plaintiffs and all Class Members are barred from further prosecution of the Released Claims.

4.2.  Under Federal Rule of Civil Procedure 54(b), there is no just reason for delay of the final dismissal of the Settling Defendants and the dismissal is hereby entered forthwith.

4.3.  The Court hereby finds that the Released Claims of the Plaintiffs and the Class Members, on behalf of themselves and their respective past and present parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, and representatives (and

9

the parents', subsidiaries', and affiliates' past and present officers, directors, employees,

agents, attorneys, servants, and representatives), and the predecessors, successors, heirs,

executors, administrators, and assigns of each of the foregoing, are completely released,

acquitted and forever discharged, by operation of this Final Approval Order and Judgment and

as defined in paragraph 2.19 of this  Order; i.e.,

> [T]he Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, and causes of action (whether class, individual, or otherwise in nature); damages whenever incurred; and liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, that Releasors, or anyone of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees, whether known or unknown, that relate in any way to the facts, occurrences, transactions, other matters alleged in the Litigation, or that could have been asserted in the Litigation under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy laws.

> "Released Claims" do not, however, include claims based on (a) product defect, breach of contract, breach of warranty, or similar claim; or b) indirect purchases of Self-Adhesive Labelstock Products.  Such reservation of  claims by the Releasors does not constrain the Releasees from asserting any defense to those claims.  The Releasors shall not, after the Effective Date of this Settlement Agreement, seek to recover against any of the Releasees for any of the Released Claims.

4.4.  Upon the occurrence of the Effective Date, Releasors shall be completely released,

acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of

action, damages whenever incurred, and liabilities of any nature whatsoever, including costs,

expenses, penalties, and attorneys' fees, that Releasees, or any one of them, whether directly,

10

representatively, derivatively, or in any other capacity ever had, now have, or hereafter can, shall, or may have against Releasors, whether known or unknown, relating in any way to the institution, prosecution, or assertion of the Class Action or the Released Claims.

4.5.  The Settlement Agreement does not settle or compromise any claim other than the Released Claims against the Releasees.  All rights of any Class Member against any person or entity other than the Releasees for sales made by the Settling Defendants are specifically reserved by Plaintiffs and the Class Members.  This Settlement Agreement is not intended to remove purchases of Self-Adhesive Labelstock from the Settling Defendants from the Class Action against the Non-Settling Defendants and/or any future defendants other than the Releasees as a basis for damage claims and joint and several liability against the Non-Settling Defendants and/or any future defendants or any persons or entities other than the Releasees.

4.6.  Plaintiffs each knowingly, voluntarily, intentionally, and expressly waive any and all rights and benefits conferred by California Civil Code Section 1542 or any law or principle of common law of any other state that is similar to Section 1542.  Plaintiffs certify that they are aware of and have read and reviewed the following provisions of California Civil Code Section 1542: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  Plaintiffs acknowledge that they may hereafter discover facts in addition to or different from those which they know or

believe to be true with respect to the subject matter of this Settlement Agreement, but it is their

intention to fully and finally settle and release the Released Claims, including those which the

Plaintiffs may not know or suspect to exist at the time of the execution of the Settlement

Agreement, notwithstanding the discovery or existence of any such additional or different facts.

The provisions of the release set forth above shall apply according to their terms, regardless of

provisions of Section 1542 or any equivalent, similar, or comparable present or future law or

principle of law of any jurisdiction.  Pursuant to the Settlement Agreement, Plaintiffs have

expressly waived and relinquished any and all rights and benefits existing under (I) Section

1542 or any equivalent, similar, or comparable present or future law or principle of law of any

jurisdiction; and (ii) any law or principle of law of any jurisdiction that would limit or restrict the

effect or scope of the provisions of the release set forth above.

V.      EXPENSES

5.1.  The Court approves the award of $500,000 to be paid from the Settlement Fund to

Class Counsel to use in paying outstanding and future litigation costs.

VI.     FINALITY OF JUDGEMENT

6.1.  The Court finds that this Final Approval Order and Judgment adjudicates all the

claims, rights, and liabilities of the parties to the Settlement Agreement and is final and shall be

immediately appealable.  Neither this Order nor the Settlement Agreement shall constitute any

evidence or admission of liability by the Settling Defendants, nor shall either document or any

12

other document relating to the Settlement be offered in evidence or used for any other purpose in this or any other matter or proceeding except as may be necessary to consummate or enforce the Settlement Agreement or the terms of this Order or if offered by the Settling Defendants in responding to any action purporting to assert Released Claims.

VII.    RETENTION OF JURISDICTION

7.1.  Without affecting the finality of this Order, the Court retains jurisdiction for the purposes of enabling any of the Settling Parties to apply to this Court at any time for such further orders and directions as may be necessary and appropriate for the construction or carrying out of the Settlement Agreement and this Final Approval Order and Judgment, for the modification of any of the provisions of this Final Approval Order and Judgment, and for the enforcement of compliance herewith.

SO ORDERED.

Dated this 5th day of August, 2008.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

13

EXHIBIT 1

Persons and Entities that timely excluded themselves from the Settlement Class:

Interstate Papers Company

Martin Automatic, Inc.

Red Oak Label, LLC

Gallus, Inc.